1

2

3

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE EASTERN DISTRICT OF CALIFORNIA

9 JENNIFER MAROTT,

10        Plaintiff,               CIV-S-04-0409 GGH

11   vs.

12 JO ANNE B. BARNHART,        <u>ORDER</u>

13 Commissioner of Social Security,

14        Defendant.

15 _____/

16      Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17 Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18 ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social

19 Security Act ("Act").

20      For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand

21 is granted in part, and the Commissioner's Motion for Summary Judgment is denied in part. The

22 Clerk is directed to enter judgment for plaintiff, and the case is remanded only for the purpose of

23 computing SSI benefits from June 2002 forward.

24 <u>BACKGROUND</u>

25      Plaintiff, born December 22, 1965, applied for disability benefits on September

26 12, 1994. (Tr. at 157, 161.)  Plaintiff alleged she was unable to work since September 1, 1993,

1

due to mental and emotional illnesses, instability, physical discomfort, stress, inability to think

clearly and incapacitating headaches.  (Tr. at 402.)  In a decision dated August 29, 1997, ALJ

Joseph G. Dail, Jr. determined that plaintiff was not disabled.  (Tr. at 44.)  After review of that

decision, the Appeals Council remanded for further proceedings.  On September 15, 1999, ALJ

Stanley R. Hogg determined that plaintiff was not disabled.  (Tr. at 12.)  After the Appeals

Council denied review, plaintiff filed an action in this court.  On September 17, 2001, the parties

stipulated to remand pursuant to sentence four in order for plaintiff to obtain a new ALJ hearing

and decision, and for the ALJ to evaluate the statements of the lay witness.  (Tr. at 504-05.)  In a

decision dated February 18, 2003, ALJ Antonio Acevedo-Torres found that plaintiff was not

disabled.[1]  The ALJ made the following findings:

\\\\\

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 30, 1994.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527 and 416.927).

7.    The claimant has the residual functional capacity to perform unskilled work that does not involve more than occasional contact with the public, or co-workers.

8.    The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565 and 416.965).

9.    The claimant is a younger "individual between the ages of 18 and 44" (20 CFR § 404.1563 and 416.963).

10.    The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

11.    The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

12.    Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as an assembler, sorter, electronics worker, janitor, farm worker, and escort vehicle driver.

13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this

1              decision (20 CFR §§ 404.1520(f) and 416.920(f)).

2      14.    The claimant has no exertional limitations (20 CFR §§
              404.1545 and 416.945).

3

4  (Tr. at 415.)

5  ISSUES PRESENTED

6              This case presents itself as almost impossible to adjudicate.  Mental disabilities

7  are hard enough to evaluate in that oftentimes little in the way of "objective" evidence is

8  available.  The difficulties are exacerbated here where plaintiff is claiming disability over a long

9  period of time, and her economic realities apparently provided little in the way of resources with

10 which to seek continuous treatment.  The exacerbated difficulties are made even more difficult

11 when the evidence relied upon by the Commissioner, or the only significant evidence available,

12 are one-time snapshots of a plaintiff's medical condition made by a consulting physician on a

13 particular day.  Nevertheless, this case which has been pending administratively and in court for

14 *over a decade* must finally be decided.

15             Plaintiff has raised the following issues:  A.  Whether the ALJ Erred in Rejecting

16 the Opinion of a Consultative Examiner, Dr. Straehley; and B.  Whether the ALJ Should Have

17 Obtained Testimony From a Vocational Expert to Determine Plaintiff's Residual Functional

18 Capacity.

19 LEGAL STANDARDS

20             The court reviews the Commissioner's decision to determine whether (1) it is

21 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

22 the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

23 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

24 Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

25 accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

26 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

1 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical

2 testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

3 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

4 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5 Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

6 ANALYSIS

7     A.  Whether the ALJ Erred in Rejecting the Opinion of Consultative Examiner Dr.

8 Straehley

9          Plaintiff contends that the ALJ improperly rejected the opinion of consulting

10 examiner Dr. Straehley, who found that plaintiff was disabled as a result of her psychosis.

11          The weight given to medical opinions depends in part on whether they are

12 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

13 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

14 more weight is given to the opinion of a treating professional, who has a greater opportunity to

15 know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

16 Cir. 1996).

17          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18 considering its source, the court considers whether (1) contradictory opinions are in the record;

19 and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a

20 treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81

21 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be

22

23          [2]  The regulations differentiate between opinions from "acceptable medical sources" and
"other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24 psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25 when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26 accordingly are given less weight than opinions from "acceptable medical sources."

1    rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

2    professional's opinion generally is accorded superior weight, if it is contradicted by a supported

3    examining professional's opinion (supported by different independent clinical findings), the ALJ

4    may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

5    Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

6    weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

7    2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

8    supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

9    (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

10   881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

11   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

12           Plaintiff contends that Dr. Straehley's opinion is much more recent and

13   consequently more accurate than Dr. Greenleaf's opinion, upon whom the ALJ relied, because it

14   was based on an examination in 2002 whereas Dr. Greenleaf's evaluation was done in 1996.

15   Plaintiff also contends that Dr. Straehley's report is more consistent with the remainder of the

16   record which indicates a long history of paranoia.

17           Turning to the issue at hand, Dr. Straehley, a psychiatrist, examined plaintiff in

18   June, 2002, at the request of the Department of Social Services on June 14, 2002.  (Tr. at 516.)

19   He also indicated that he reviewed plaintiff's records up to that time.  After examining plaintiff

20   and reviewing her medical records, he opined that:

22           she is severely impaired in terms of relating to people.  I
             respectfully disagree with the opinions expressed in several prior
23           treatment notes and two prior social security evaluations.  One
             social worker at Sacramento County Mental Health Center opined
24           that she had psychotic disorder NOS.  I agree that Ms. Marott has a

25           [3] The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

                                                    6

psychotic disorder which is associated with severe interpersonal disability.

(Tr. at 520.)

He thought plaintiff's prognosis was poor based on his diagnosis of delusional disorder paranoid type, depressive disorder NOS, somatiform disorder NOS and avoidant personality traits. (<u>Id.</u>)

Dr. Straehly went on to find plaintiff: not limited with respect to understanding and being able to carry out simple instructions; slightly limited with respect to detailed instructions, markedly limited in the ability to make judgments on simple work related decisions, markedly unable to interact with the public, extremely unable to interact with supervisors or co-workers; and markedly limited in her ability to respond appropriately to work pressures and changes in her work setting. (Tr. 521-522).

The ALJ chose to rely instead on the 1996 report of Dr. Greenleaf. He stated:

> Dr. Greenleaf stated that the claimant could function in work situations with little peer and public contact, and Dr. Eldredge stated that the claimant had moderate limitations in her ability to relate to others. ... The state agency physicians stated that the claimant could perform simple tasks with limited contact with others. ... While Dr. Straehley concluded the claimant was severely impaired in relating to people, this assessment is contrary to the opinions of two other examiners as well as the conclusions rendered by the state agency physicians. ... Thus, since the great weight of the evidence is contrary to Dr. Straehley's opinion, his assessment was rejected. It is concluded that the claimant has moderate difficulties in maintaining social functioning.

(<u>Id.</u> at 410.)

Dr. Greenleaf evaluated plaintiff in February, 1996, without the benefit of medical or psychiatric records. He noted that plaintiff, although not having worked since 1995, lived alone in an apartment, could take care of her own activities of daily living, and could use public transportation. (<u>Id.</u> at 266.) Plaintiff was alert and oriented, had good attention and concentration, and followed three step commands accurately and efficiently. (<u>Id.</u> at 267.) This consultative examining psychiatrist diagnosed plaintiff with major depression, personality

7

1  disorder NOS with histrionic, paranoid, schizotypal, and dependent traits, and a GAF over the

2  last year of between 55 and 60.[4]  (Tr. at 268.)  He did not think plaintiff was delusional or

3  hallucinating based on her statements which he thought were grandiose and paranoid.  (Id. at

4  266.)  Based on this diagnosis, Dr. Greenleaf thought plaintiff could understand, carry out and

5  remember complex instructions, could function in a work setting that did not have much peer or

6  public contact, and could tolerate reasonable, constructive criticism.  (Id. at 268.)  She could

7  tolerate ordinary job stresses.  (Id.)  This psychiatrist concluded that plaintiff had a fair prognosis

8  with appropriate treatment.  (Id. at 269.)

9         The ALJ erred in relying on Dr. Greenleaf.  This is not the first time that the

10  undersigned has pointed out the clear impropriety of rendering a psychiatric opinion on an

11  alleged long term mental illness without recourse to medical records which could reasonably

12  have been procured.  The court cannot envision that plaintiff's previous medical/mental

13  encounters would be irrelevant to a consulting psychiatrist.  Rather, it does not take a medical

14  school graduate to understand that one's previous report of problems and treatment would be

15  critical in assessing the bona fides of a problem related to that previous history.  The court is not

16  saying that an examination is not an important part of the whole picture—it certainly is.  The

17  court is saying that *both* an examination and record review are necessary before a psychiatric

18  opinion has more value than simply the day of the examination.

19         Dr. Eldridge, a Ph.D., evaluated plaintiff on June 23, 1999, also without the

20  benefit of medical or psychiatric records.  He reported that her speech was clear, coherent, and

21  fluent.  (Id. at 365.)  She was fully cooperative and easily engaged.  Although her affect was

22  appropriate, she was mildly anxious.  (Id.)  He noted that plaintiff had attempted suicide twice in

23  the past, and that she had some delusional ideation as well as paranoid ideation.  (Tr. at 366.)

24  _____

25         [4] According to the DSM IV, a GAF of 51 to 60 indicates moderate symptoms such as flat
   affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in
26  few friends or conflicts with peers or co-workers.

The diagnosis was post-traumatic stress disorder chronic, paranoid personality disorder, and a GAF of 50. (Id. at 366.) Prognosis was poor with the opinion that plaintiff had a difficult time in managing work, having been fired from many jobs. (Id.) This psychologist thought the cause was probably delusional ideation and paranoia. Dr. Eldridge thought plaintiff could understand and follow simple instructions and could demonstrate self-directed and self-autonomous behavior. (Id.) The ALJ also relied on this evidence in part. The ALJ did not agree that plaintiff had moderate limitations in following instructions and moderately severe limitations in performing simple tasks because these limitations were not supported by the limited findings in Eldridge's report and the record. (Id. at 411.) Once again, this doctor's opinion is insubstantial as no record review was conducted.

In addition to Drs. Greenleaf and Eldridge, the ALJ also counted the evidence of the state agency examiner, Dr. Mateus. (Tr. at 275.) This non-examining psychiatrist completed a psychiatric review technique form on February 22, 1996 and reviewed plaintiff's medical records. (Tr. at 286.) He concluded that plaintiff had major depression, mild, and personality disorder NOS. He thought she could work as long as she had minimal contact with people. (Id. at 275.) While this reviewing psychiatrist did review records, he did not have the benefit of an examination. There is no occasion to reject Dr. Straehley's opinion simply on the basis of a reviewing professional's opinion.

Records from Sacramento County Mental Health, covering the period June 1994 to May, 1995, and from September, 2001 to September, 2002, mostly recount her subjective complaints. (Tr. at 305-25.) She first tried Zoloft which she stopped, and then tried Paxil, but then requested to retry Zoloft. (Tr. at 308.) On June 14, 1994, the diagnosis was listed as "rule out psychotic disorder NOS," and a GAF of 31.[5] (Tr. at 316.)   A provisional diagnosis was

---

[5] According to the DSM IV, A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or

made on August 29, 2001, of major depressive disorder, recurrent, severe with psychotic features. (Tr. at 532, DSM-IV at 806.)  On September 27, 2001, plaintiff was prescribed Wellbutrin.[6] (Tr. at 541.)

In 1996, plaintiff was seen 13 times by an MFCC intern.  This intern, Tracy Bright, thought that plaintiff could not work at that time due to her many symptoms and disorders.  (Tr. at 372.)

Plaintiff's mother, Patricia Weenolsen, a psychologist, wrote a letter to the ALJ on November 3, 1999, regarding plaintiff's appeal from his denial.  (Tr. at 384.)  Her opinion was that based on plaintiff's serious diagnoses over the years, coupled with her track record in failing to hold a job and her inability to stick with medications she needs to take for her mental disorders, all point to disability.  (Id. at 391-93.)

Although the records reflect a history of two suicide attempts at age 12 and 13 (or 14), and a third hospitalization for suicidal ideation in late 1992, plaintiff reported in 1994 that she felt confident she would not commit suicide at that time.  (Tr. at 530, 237.)

Some of these reports are not by acceptable medical sources and are therefore entitled to less weight than the opinions of the psychiatrists and psychologist relied upon by the ALJ.  See 20 C.F.R. § 404.1513 (d)(1), (d)(2), (d)(4).  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  For example, licensed physicians and psychologists are considered "acceptable medical sources," therapists, social welfare agency personnel, and parents, are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions

_____

mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)"

[6] Paxil, Zoloft, and Wellbutrin are prescribed for major depression.  See www.pdrhealth.com.

1   from "other sources."  Opinions from "other sources" accordingly are given less weight than

2   opinions from "acceptable medical sources."

3         Although plaintiff's record is contradictory in part, this information is precisely

4   the type of information which a clinician would take into account, or utilize in some fashion, in

5   shaping opinions derived from an examination alone.  Dr. Straehly utilized both his examination

6   and a record review—the other professionals did not.  Therefore, the ALJ had no legitimate

7   occasion to reject Dr. Straehly's opinion.

8         This brings the court to the final issues—date of onset and remand for benefits or

9   further testimony.  With respect to date of onset, while Dr. Straehly's opinion can and should be

10   found to be substantial evidence of plaintiff's disability as of the examination in 2002, the court

11   cannot find that his opinion sufficiently relates to the time plaintiff first claimed an inability to

12   work in 1993.  Surely, the records are indicative of mental problems throughout the nineties, but

13   the critical inquiry is whether these problems were so severe from 1993 up to 2002 that plaintiff

14   was completely unable to work.  There is simply no medical opinion that can be utilized to

15   encompass that entire period of time.  Dr. Straehly's opinion, although he referenced a "pattern"

16   at one point, was essentially present and prospective only.  Plaintiff's burden to produce

17   satisfactory (even if problematic) evidence of her disability was not met until June 2002.

18         Therefore, plaintiff cannot establish entitlement to Title II Social Security

19   Disability benefits because her date of onset is past her date last insured.  She will be entitled to

20   SSI benefits as of June 2002.

21         The decision whether to remand a case for additional evidence or simply to award

22   benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

23   1990).  Plaintiff's application and case has been pending for more than a decade.  It is simply

24   unfair to send this case back for another look by a vocational expert, who if given the limitations

25   set forth by Dr. Straehly, would inevitably determine that no jobs exist for a person with such

26   limitations, including extreme inability to relate to supervisors or co-workers.  The previous

1   hearing where a vocational expert was questioned by plaintiff's counsel proves this point.  (Tr.

2   100-106).

3            Hopefully, plaintiff will be able to seek the treatment she needs when benefits are

4   awarded.  Hopefully, any redetermination of plaintiff's illness at a later, appropriate time will

5   result in a finding by a physician, who reviews both the records and his or her examination

6   results, that plaintiff is able to work.  Until such time, plaintiff should receive benefits.

7            As this decision remands for calculation and payment of benefits only, there is no

8   need to discuss plaintiff's other assertions of error.

9   CONCLUSION

10            ACCORDINGLY, plaintiff's Motion for Summary Judgment or Remand is

11   GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED IN

12   PART, and the Clerk is directed to enter Judgment for the plaintiff.  Plaintiff's case is remanded

13   for payment of SSI benefits only from June 2002 forward.

14   DATED: 9/21/05

15                              /s/ Gregory G. Hollows

16                              _____
                                GREGORY G. HOLLOWS
17   marott409.ss                U.S. MAGISTRATE JUDGE
     GGH/076

18

19

20

21

22

23

24

25

26